## GATES *et al. v.* DUNDON *et al.*

### (*City Court of New York, General Term.* December 17, 1891.)

1. DURESS—ACTION ON NOTE—SUFFICIENCY OF PLEADING.

A supplier of materials threatened to file a lien on a house unless the owner, who had overpaid the contractor, would pay an indebtedness of the contractor to the material-man for material alleged to have been used in such house, representing at the same time to the owner that the filing of such lien in the then condition of his affairs would seriously embarrass him. The material-man made up a fraudulent statement of such indebtedness, consisting largely of charges for material furnished the contractor for other houses, represented the balance to be due for material furnished for the house in question, and obtained a note from the owner therefor. *Held*, in an action on such note, that these facts set out in the answer showed duress, and that a judgment was properly rendered for defendant on that ground, though there was no allegation of "duress" in express terms in the answer.

2. ACTION ON NOTE—INCONSISTENT DEFENSES.

A defense to an action on a note, that the same was fraudulently procured from defendant by false representations, is not inconsistent with a further defense that there was an agreement between plaintiff and defendant that the latter should not be concluded by the note, but that he might afterwards show that it did not correctly represent the amount due by him.

Appeal from trial term.

Action by Ephraim C. Gates and others against Arthur H. Dundon and others. From a judgment for defendants entered on the verdict of a jury, and from an order denying a motion for a new trial, plaintiffs appeal.

Argued before VAN WYCK and McCARTHY, JJ.

*Foster & Stephens,* for appellants. *William R. Ellison,* for respondents.

McCARTHY, J. In the early spring of 1890 the defendant Arthur H. Dundon (for 21 years a professor in the normal college in this city) solicited bids from various builders for the purpose of constructing for himself a house on property belonging to him at the corner of Creston avenue and Kick place, Fordham, New York city. Among those who responded was the defendant Leman A. Soule. Prof. Dundon was unacquainted with Mr. Soule, and thought the plaintiffs, being large dealers in builders' supplies, would most likely be acquainted with the character and responsibility of builders in that neighborhood. Prof. Dundon and Mr. Barnard were personal friends, being members of the same club and neighbors. Prof. Dundon met Mr. Barnard at the latter's office, and first told him that he was about to build a house; that the Teachers' Co-operative Building Association of the City of New York had agreed to loan him moneys wherewith to build; that the defendant Soule had bid upon the building; and that he (Dundon) was anxious to give the contract to some man who would subsequently give him no trouble. Mr. Barnard assured Prof. Dundon that the defendant Soule was one of their customers; that he paid his bills promptly; that he was building two other houses in Washington avenue and Pine street; that he was an excellent man; that he was responsible; that he owned the house he lived in, worth between four and five thousand dollars; that he had built seven other houses, and that they had had no trouble with him; that, were it not for a rule of the plaintiff's firm preventing him from so doing, he would have no hesitation in going on Mr. Soule's bond; and that Prof. Dundon was unquestionably perfectly safe in giving the contract to Mr. Soule. The contract was thereupon given, and Mr. Soule continued with the work until about the 15th day of August, 1890, when he abandoned the same. When he stopped work he had been overpaid by Prof. Dundon in about $500. On or about the 6th or 7th day of September, 1890, the plaintiff Mr. Barnard called to see Prof. Dundon, and informed

him that Mr. Soule was indebted to the plaintiffs, and that unless Prof. Dundon. paid Mr. Soule's bill the plaintiffs would file a lien upon his (Dundon's) house; that when they put their lien upon the house a half dozen other liens would follow; that the Teachers' Co-operative Building Association, learning of these liens, would refuse to make the remainder of the loan; that he would have nothing but a shell of a house on his hands, to be the talk of the neighborhood for months and months; that he must give the plaintiffs their money, or they would file the lien, and there would be no end to the worry and vexations into which he would be plunged.    Mr. Barnard knew at the time when he made the above threats that Prof. Dundon had overpaid the defendant Soule, and that the Teachers' Co-operative Building Association were advancing moneys, from time to time, as the building progressed; that the filing of a lien at that time would, as he said it would, completely stop the completion of the building, and expose Prof. Dundon to very serious loss.    Then followed several meetings between Mr. Barnard, Mr. Soule, and Prof. Dundon, at each of which Mr. Barnard, notwithstanding there was nothing then owing to Mr. Soule, threatened to file liens for the amount of the latter's indebtedness to the plaintiffs, and impressed upon Prof. Dundon the loss and injury which would be occasioned him thereby, unless he should agree to pay the amount of Mr. Soule's indebtedness to the plaintiffs.    Prof. Dundon, influenced by these threats, and in order to avoid the loss which Mr. Barnard had impressed upon him would occur if he did not do so, promised to pay the plaintiffs the amount that should be found due from the defendant Soule to the plaintiff for material actually used in the construction of the building. After Mr. Barnard had succeeded in inducing Prof. Dundon to make this promise, he then directed Mr. Soule to produce the statements of account, defendant's Exhibits 1 and 2.    When the bills were produced by Mr. Soule, Mr. Barnard expressly stated: "These are the bills sent to Mr. Soule for lumber that went into your home."    Mr. Barnard kept possession of the statements of account, but stated that the whole amount due was $783, from which he deducted $400, which had already been paid to the plaintiffs on orders made by the defendant Soule, and that the balance due for lumber actually used in the construction of Prof. Dundon's house was $383.59.    When Mr. Barnard announced this balance to be due, Prof. Dundon said that he did not know anything about the accounts, and that he depended entirely upon Mr. Barnard and Mr. Soule; to which Mr. Barnard replied that, if the statement was not right, it would be subject to revision.    A note was then drawn up for the amount of the balance alleged to be due, and signed by Prof. Dundon and Mr. Soule.    Prof. Dundon testified positively that he would not have signed the note except by reason of the threats made by Mr. Barnard, and he did so in perfect reliance upon the truth of the statement that $383.59 represented the balance due from Soule to the plaintiffs for material actually used in the construction of the building.    There was absolutely no consideration for the note other than as hereinbefore stated.    A few days after signing the note, Prof. Dundon looked over the statements of account (defendants' Exhibits 1 and 2) that had been left with him, and then discovered that Mr. Barnard had deceived him in relation thereto.

It will be remembered here that these statements of account had not been shown to Prof. Dundon before he had been induced to sign the note.    These exhibits present a perfectly clear case of fraud on the part of the plaintiffs represented by Mr. Barnard.    No evidence other than the statements themselves is necessary to show the deception practiced upon Prof. Dundon in this case.    They are in the handwriting of the plaintiffs' book-keeper.    They show upon their faces that a very large portion of the material therein referred to was delivered, upon Soule's order, to other buildings that he was then constructing at Pine street and Washington avenue, and which was not used in the construction of Prof. Dundon's house, and from which he derived no benefit whatever.    These statements show a well-defined scheme on the

part of Mr. Barnard and Mr. Soule to deceive Prof. Dundon into paying the entire indebtedness of Soule to the plaintiffs, irrespective of whether or not he had received any benefit therefrom. The total amount shown upon these exhibits is $783.59, in which is included the plaintiffs' whole account against the defendant Soule; yet the marginal notes in red ink, in the handwriting of the plaintiffs' book-keeper, show that a large portion of the material went elsewhere than to Prof. Dundon's house. Mr. Barnard, however, simply deducted from the total of these two statements the $400 previously paid the plaintiffs by Prof. Dundon on orders of Mr. Soule, and calmly alleged the balance, $383.59, to be the amount due by Mr. Soule to the plaintiffs for material actually used in Prof. Dundon's house. The figuring in pencil at the foot of the columns in the statements is in the handwriting of Mr. Barnard, and shows clearly the part he played in the scheme. Mr. Barnard has no hesitation in attempting to testify that the red-ink marginal memoranda were not in the handwriting of the plaintiffs, and he sought to show that these statements had been tampered with since they left his possession; but his counsel (more careful in relation to facts) admitted that they had been placed thereon by the plaintiffs' book-keeper. These statements were brought to Prof. Dundon by Mr. Barnard himself. The first item in these statements is not an unfair sample of the manner in which the accounts were kept, and of the glaringly apparent attempt to deceive. That item is dated March 3, 1890, for 1,000 feet of flooring. At this time the contract had not been given to Mr. Soule, and not the first effort had been made to commence the excavations for the building. In addition to the amounts charged, as shown by the statements, for material which Prof. Dundon did not receive, large quantities were delivered to the house, but subsequently removed. Very shortly after Prof. Dundon discovered the alleged fraud that had been practiced upon him, he notified Mr. Barnard that he would not pay the note. The defendant Soule did not defend, and the plaintiffs now ask judgment against him for the amount of the note sued on.

Upon the foregoing facts, Prof. Dundon resisted payment of the note on the following grounds: (1) That there was no consideration therefor; (2) that the note had been obtained from him upon false and fraudulent representation, made by or on behalf of the plaintiffs; (3) that he was induced to sign the note by reason of the threats made by plaintiffs, and in order to avoid the loss and damage which were alleged would occur in case of his refusal; and (4) that the amount was subject to revision, and the utmost that the plaintiffs could recover, in any event, was the amount of the material actually used in his house.

The case was finally, under instructions of the court, submitted to the jury, who found a verdict for the defendant. The plaintiffs moved for a new trial, upon the ground that the verdict is against the law, against the evidence and exceptions taken at the trial, which motion was denied. They now appeal from the judgment entered upon the verdict, and the order denying a new trial. The plaintiffs claim that the court had no authority whatever to submit the question of duress as a defense to the jury, because no such defense was set up in the answer. The answer is as follows:

"CITY COURT OF NEW YORK.
"*Ephraim C. Gates and others, Plaintiffs*, vs. *Luman A. Soule and Arthur H. Dundon, Defendants*. Answer.

"The above-named defendant Arthur H. Dundon, for his answer to the plaintiffs' complaint herein, shows to the court as follows:

"*First*. For a first defense, he admits the making of the promissory note referred to in the complaint herein, but alleges that the same was made without any consideration whatever.

"*Second*. And for a second and further defense: (1) He alleges that prior to the 11th day of September, 1890, this defendant, desiring to have con-

structed for him a dwelling-house on certain of his property in the city of New York, sought bids and estimates from various contractors for the construction thereof, among whom was the above-named defendant Luman A. Soule, whose bid or estimate this defendant accepted at the suggestion of the plaintiffs, and upon their recommendation of the responsibility of the said Luman A. Soule. (2) He alleges that thereupon this defendant and said Luman A. Soule entered into an agreement or contract for the construction of said dwelling-house, under and in pursuance of which this defendant agreed to and did pay to said Luman A. Soule, or to his order, large sums of money, at various. times, to enable him to purchase the material and perform the work that he agreed to purchase and perform under said agreement or contract, including the material to be and which was furnished by the defendant Luman A. Soule from the plaintiffs. (3) He alleges that shortly thereafter, but still prior to the said 11th day of September, 1890, this defendant was informed by the plaintiffs that the said Luman A. Soule had not applied the moneys so paid to him by this defendant for that purpose to the liquidation of the indebtedness of the said Luman A. Soule to the plaintiffs for material supplied him for the construction of said dwelling-house, and that the said Luman A. Soule was indebted to them, therefore, in a large amount, and that they would file a lien on said property therefor unless the same was paid. (4) He alleges that this defendant then stated to the plaintiffs, and the fact was, that he had then overpaid the said defendant Luman A. Soule, and was not indebted to him in any amount, but that he was willing to pay to them the price or value of the material supplied by them to the said Luman A. Soule, and actually used in the construction of this defendant's said dwelling-house, if any there were then yet remaining unpaid for. (5) He alleges that thereupon, and prior to the said 11th day of September, 1890, and prior to the making of the said promissory note in the complaint referred to, the plaintiffs falsely and fraudulently, and with intent to deceive this defendant, stated to this defendant that there then was material which had been supplied by them to the said Luman A. Soule, and actually used in the construction of this defendant's said dwelling-house, of the price or value of $383.59, for which said sum the said Luman A. Soule was then still indebted to the plaintiffs. (6) He alleges that this defendant, relying upon said false and fraudulent representations of the plaintiffs, and deceived thereby, signed said promissory note, which was and is for the amount of said alleged indebtedness of the said Luman A. Soule to the plaintiffs. (7) He alleges that said statements of the plaintiffs as to the amount due by the said Luman A. Soule to them for material supplied to him by them, and actually used in the construction of this defendant's said dwelling-house, were false and fraudulent, and were made with the intention to deceive, and they did deceive, this defendant, and he was therefore misled and induced to sign said promissory note.

"*Third.* And for a third and further defense: (1) He alleges that prior to the 11th day of September, 1890, this defendant, desiring to have constructed for him a dwelling-house on certain of his property in the city of New York, sought bids or estimates from various contractors for the construction thereof, among whom was the above-named defendant, accepted at the suggestion of the plaintiffs, and upon their recommendation of the responsibility of the said Luman A. Soule. (2) He alleges that thereupon this defendant and said Luman A. Soule entered into an agreement or contract for the construction of said dwelling-house, under and in pursuance of which this defendant agreed to and did pay to said Luman A. Soule, or to his order, large sums of money at various times, to enable him to purchase the material and perform the work that he had agreed to purchase and perform under said agreement or contract, including the material to be and which was purchased by the defendant Luman A. Soule from the plaintiffs. (3) He alleges that shortly thereafter, but still prior to the said 11th day of September, 1890,

this defendant was informed by the plaintiffs that the said Luman A. Soule had not applied the moneys so paid to him by this defendant for that purpose to the liquidation of the indebtedness of the said Luman A. Soule to the plaintiffs for material supplied him for the construction of said dwelling-house, and that the said Luman A. Soule was indebted to them therefor in a large amount, and that they would file a lien on said property therefor, unless the same was paid. (4) He alleges that this defendant then stated to the plaintiffs, and the fact was, that he had then overpaid the said defendant, Luman A. Soule, and was not indebted to him in any amount, but that he was willing to pay to them the price or value of the material supplied by them to the said Luman A. Soule, and actually used in the construction of this defendant's said dwelling-house, if any there were then yet remaining unpaid for. (5) He alleges that thereupon, and prior to the said 11th day of September, 1890, and prior to the making of the said promissory note in the complaint referred to, the plaintiffs stated to this defendant that there was material which had been supplied by them to the said Luman A. Soule, and actually used in the construction of this defendant's said dwelling-house, of the price or value of $383.59, for which said sum the said Luman A. Soule was then still indebted to the plaintiffs. (6) He alleges that this defendant signed said promissory note relying upon said representations of the plaintiffs, and deceived thereby, and upon the express understanding and agreement, then had between the plaintiffs and this defendant, and said note was made and delivered on and subject to the condition, that the said promissory note should not be binding or conclusive between them, but that this defendant might at any time thereafter correct said amount, and show that the same did not correctly represent the amount of said alleged indebtedness of the said Luman A. Soule to the plaintiffs for material supplied him by them, and actually used in the construction of this defendant's said house. (7) He alleges that the said amount of the said promissory note grossly exceeds the amount due by the said Luman A. Soule to the plaintiffs as aforesaid. Wherefore this defendant asks judgment dismissing the plaintiffs' complaint, with the costs and expense of this suit."

The fact that the answer states the fraudulent representations of the plaintiffs, by which the defendant was induced to sign the note in question, and by which the defendant seeks now to avoid the payment, does not necessarily stamp the same as in tort, especially when the words in the answer charging fraud may be regarded as matter of inducement. It is quite clear, upon an examination of the answer, that the allegations are sufficient to allow of the defense. It alleges the fraud and deception that were practiced on the defendant by Barnard and Soule, and as an inducement in procuring the promissory note from the defendant, although the defendant constantly protested. *Secor* v. *Clark*, 117 N. Y. 350, 22 N. E. Rep. 754, was an appeal from a judgment of the general term of the superior court of the city of New York entered upon an order which reversed a judgment in favor of the defendant entered upon a decision of the court on trial at special term. The court of appeals, in reversing the order of the general term, and affirming the judgment of the special term, at page 353, 117 N. Y., and page 755, 22 N. E. Rep., after stating the allegations of the complaint and the evidence given, says: "There is no allegation in the complaint, and there was no proof upon the trial, of any fraud or deception practiced by Clark in procuring the assignment from the plaintiff. At the time they executed it they knew all about the facts. * * * Such things do not constitute duress, within any authority to be found." This was good law, and we must follow it. In this case the answer alleges all the requirements, and apprised the plaintiffs that one of their defenses is the avoidance of the payment of the note, because they did not sign it voluntarily; that, on the contrary, it was compulsory, and induced by the fraudulent statements alleged and the threats made. It was not necessary to

use the word "duress," or any other word, but the facts must be properly set forth. We think the plaintiffs were fairly warned by the answer, and such cause of action is fairly embraced within the facts alleged therein. The principle being that where there exists coercion, threats, or compulsion, and where injustice is done by means of such improper and dishonest influences as to subdue the will of a party that it loses the power of resistance, the law will interpose its power in protecting the party thus imposed upon, either by refusing its aid to the wrong-doer, or by defeating and undoing the wrong, and restoring to the injured party what he had been deprived of. Plaintiffs also except to so much of the charge of the court as permits the jury to find a verdict in favor of the defendants on the ground of duress. This exception is not well taken. The evidence of Mr. Dundon, and the presentation of the exhibits, as well as the rest of the testimony, clearly makes this a question of fact for the jury. It sufficiently defines the position of the parties, and shows that the giving of the note was not the free and voluntary act of the defendant, but that he had no choice, in order to prevent the plaintiff from doing the various acts threatened, and thus cause loss and damage to his property and fortune. EARL, J., in *Dunham* v. *Griswold*, 100 N. Y. 226, 227, 3 N. E. Rep. 76, says: "When there is no arrest, no imprisonment, no actual force, and it is claimed that a promise was obtained by duress *per minas*, then whether or not the promise was obtained by duress must usually be a question of fact, and the question cannot be determined as one of law. It is not sufficient in such a case to satisfy the trial court that threats were uttered; but it must also be shown that they constrained the will of the promisor, and induced the promise." This ruling was clearly met during the trial of this case. CHURCH, C. J., in *Baldwin* v. *Steam-Ship Co.*, 74 N. Y. 128, says: "It is not disputed but that, if the defendant was not legally entitled to exact the £200 for the transportation of the boxes, the plaintiffs are entitled to recover back, as having been paid under duress of goods." RAPALLO, J., in *Scholey* v. *Mumford*, 60 N. Y. 501, says: "To constitute a voluntary payment, the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion, the payment is not voluntary. If a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other, unless the latter pays him a sum of money which he has no right to receive, and in order to obtain possession of his property he pays that sum, the money so paid is a payment made by compulsion, and may be recovered back. Per BAYLEY, J., *Shaw* v. *Woodcock*, 7 Barn. & C. 73." This has been frequently decided. Where a pawnbroker refused to deliver plate pawned, except upon payment of excessive interest, and the owner paid it to obtain his property, he was allowed to recover back the excess. *Ashley* v. *Reynolds*, 2 Strange, 915. An action will lie to recover back money paid to release goods wrongfully detained on a claim of lien, (*Ashmole* v. *Wainwright*, 2 Adol. & El., N. S., 837; *Harmony* v. *Bingham*, 12 N. Y. 109, 116,) or money wrongfully exacted by a corporation as a condition permitting a transfer of stock, (*Bates* v. *Insurance Co.*, 3 Johns. Cas. 238.) The cases to this effect are numerous. In all cases the payment is regarded as compulsory, and not voluntary. I think the case at bar falls within the principle of these decisions. See *McPherson* v. *Cox*, 86 N. Y. 479; *Harmony* v. *Bingham*, 12 N. Y. 116, 117; *Stenton* v. *Jerome*, 54 N. Y. 485; *Barry* v. *Assurance Soc.*, 59 N. Y. 592. The motion to require the defendant to elect between the second and third defenses in the answer was properly denied. They were not inconsistent. See *Kelly* v. *Bernheimer*, 47 How. Pr. 62. We think no error has been committed. The other exceptions were not well taken, either because they were made too late or were too general or the testimony was material. The question at folio 138 of the case, "*Question*. Would you have signed it had it not been for them?" was properly allowed. It was not only necessary to prove the fraud and fraudulent

representations, but also to show that they were the inducements, influence, or compulsion under which the defendant signed the promissory note. The judgment should be affirmed, with costs.