(40 Misc. Rep. 228.)

### RYAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Term. March, 1903.)

1. AUCTIONEERS—LICENSE FEE—RECOVERY BACK.

Under Laws 1897, p. 776, c. 682, § 2, requiring an auctioneer in the city of New York to pay a license fee, an auctioneer paid a fee from September 15, 1897, to June 15, 1898. Laws 1897, p. 1, c. 378, going into effect January 1, 1898, required no license fee. *Held*, that the auctioneer could not recover back the proportionate part of the fee from January 1, 1898, to June 15, 1898, as the latter act did not impliedly repeal the law of 1897, or make the license void.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by John J. Ryan against the city of New York. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GIEGERICH and GILDERSLEEVE, JJ.

Geo. L. Rives, Corp. Counsel (Terance Farley and Leroy D. Ball, Jr., of counsel), for appellant.

James E. Smith, for respondent.

GIEGERICH, J. The action was commenced by the service of a summons to recover the unearned portion accruing after January 1, 1898, of an auctioneer's license fee of $250, paid by the plaintiff (respondent) to the mayor of the city of New York. The complaint alleged that on the 15th day of September, 1897, upon the application of the plaintiff, William L. Strong, the then mayor, issued to him "a certain license to engage in and carry on the business and occupation of an auctioneer in the county of New York, said license to continue in force up until June 15, 1898," and at the same time he paid to the mayor "the sum of $250 for said license," and filed a bond, etc., "pursuant to the provisions of chapter 682, p. 775, of the Laws of 1897." The gist of the complaint is contained in paragraph 3, which is as follows:

"Third. That on January 1, 1898, said license ceased, determined, and became void by virtue of section 34 of chapter 378, p. 13, of the Laws of 1897, known as the 'Greater New York Charter,' and thereupon became due and owing on account thereof by the defendant to the plaintiff, by virtue of section 34 of the Greater New York Charter, as a ratable proportion of the whole

license fee paid by this plaintiff, as hereinbefore set forth, for the unexpired portion of said license, to wit, from January 1, 1898, to June 15, 1898, the sum of $177.40.".

By its answer the defendant admitted the granting of the license, the payment of the license fee, the filing of the bond, the presentation of the claims upon which the action was based to the comptroller, and denied, on information and belief, the remaining allegations of the complaint. There is no dispute as to the facts, and this appeal presents simply questions of law.

The license as an auctioneer was granted to the plaintiff on the 15th day of September, 1897, while chapter 682, p. 775, of the Laws of 1897 was in force, and upon receiving the license he paid therefor the sum of $250. This license recited that it was to continue in force until the 15th day of June next (1898), "unless sooner revoked by the mayor." The Greater New York Charter went into effect on the 1st day of January, 1898, and its thirty-fourth section provided as follows:

"Sec. 34. The city clerk shall have authority to grant licenses to any person engaged in and carrying on the business and occupation of auctioneer, or desiring to be so engaged, on such person filing a bond, approved by him, with two good sureties in the penal sum of two thousand dollars. The president of the council, on complaint of any person having been defrauded by an auctioneer, or by the clerk, agent or assignee of such auctioneer, doing business in said city, is authorized and directed to take testimony under oath relating thereto; and if the charge shall, in his opinion, be sustained, he shall revoke the license granted to him and direct the bonds to be forfeited."

It is difficult to understand how the section last quoted in any way abrogated or annulled the plaintiff's license, or in any way affected it. It certainly did not in terms entitle him to the return of any portion of the license fee, nor did it by implication.

If we assume that chapter 682, p. 775, of the Laws of 1897 was not repealed by section 34, p. 13, of the Greater New York Charter, and by virtue of section 1610, p. 555, thereof was extended to the city of New York as therein constituted, as was expressly held in the Appellate Division of this department in Saul v. United States Fidelity Co., 71 App. Div. 77, 75 N. Y. Supp. 615, then there can be no recovery. The syllabus of that case is as follows:

"Section 5 of chapter 682, p. 776, of the Laws of 1897, relating to auctioneers in cities of 1,000,000 inhabitants and over, which provides that the sureties upon a bond given by an auctioneer pursuant to the act 'shall be liable for breach of contract or of duty towards the person or persons consigning goods for sale, as well as for the other acts, omissions and matters now provided by law,' was by virtue of section 1610 of the charter of Greater New York (Laws 1897, p. 555, c. 378) extended to the city of New York as therein constituted."

It is true that this case, in the main, deals with section 5 of chapter 682, p. 776, while the second section is the one which requires the payment of a license fee of $250; but still, under this decision, there is no room to doubt that, so far as it is not inconsistent with section 34 of the statute in its entirety, it is not impliedly repealed. Baker v. City of New York, 56 App. Div. 350, 67 N. Y. Supp. 814; People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637. The only appreciable differences between the two statutes are: (1) Under

the act of 1897 the mayor granted the license, while under section 34 the licenses are granted by the city clerk. (2) Under the act of 1897 the bond is to be approved by the comptroller, while under section 34 it is to be approved by the city clerk. (3) Under the act of 1897 a license fee of $250 is exacted, while under section 34 no license fee is required. But section 34 does not say anything about the return of the money. It merely takes away the requirement of a fee. Much less does it contain any provision as to the repayment.

Under such a state of facts we do not see how there could be any recovery of any amount whatever. The case is very analogous to that where, under the statutes of the United States, license fees were required to be paid in order to engage in professional practice, and when the law repealing such licenses went into effect, there was no pretense on the part of any·one that any portion of such license fee was returnable because the law went into effect during the year for which licenses had been paid. But, assume that chapter 682, p. 775, of the Laws of 1897 was repealed by section 34, p. 13, of the Greater New York Charter, it does not follow that the plaintiff's license ceased, determined, and became void. Section 1614, p. 557, of the charter expressly provides that "no right or penalty of any character shall be lost or impaired or affected by reason of this act." See Matter of Munn, 165 N. Y. 149, 58 N. E. 881. The same rule is enunciated in section 31 of the statutory construction act (Laws 1892, p. 1491, c. 677) in the following language:

"The repeal of a statute or part thereof shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be asserted, enforced, prosecuted or inflicted as fully and to the same extent as if such repeal had not been effected."

We cannot conceive how the provisions of section 34 can be construed so as to cause plaintiff's license to cease, determine, and become void. Forfeitures are abhorred by the law, and, if it is possible to construe a statute in such a way as to avoid a forfeiture, that construction will be given to it. Endlich on Interpretation of Statutes, § 343. But, if no recovery can be had under any of the provisions before mentioned, it is equally clear that the plaintiff cannot maintain this action on the theory that the payment of the license fee was not a voluntary payment, or made under coercion or duress. In the first place there is no such cause of action pleaded, and it is well settled that this is necessary in order to entitle to a recovery. Commercial Bank v. City of Rochester, 41 Barb. 341; Gates v. Dundon (City Ct. N. Y.) 18 N. Y. Supp. 149. But, if this were not so, by accepting the benefits of the license, the plaintiff is estopped from asserting that the mayor did not have the power to exact the fee. Matter of Peaslee's Will, 73 Hun, 113, 25 N. Y. Supp. 940.

At the close of the plaintiff's case his counsel moved to conform the complaint to the proof submitted. Just what was meant by this motion is not clear, unless it may be surmised that, because defendant's counsel argued that the money could not be recovered back because the payment was voluntary, the plaintiff had introduced in the evidence some proof that the payment was involuntary. We

have looked the record over with care for any such proof, but have been unable to find any which would make it involuntary under the authorities. See Deshong v. City of New York, 74 App. Div. 234, 77 N. Y. Supp. 563, where the city authorities refused to allow the owner of the abutting property to reconstruct a vault until he obtained a permit. In order to obtain this permit he paid, under protest, the sum of money demanded therefor, and then brought an action to recover it back, on the theory that it was paid under compulsion and duress. He testified that he paid the money "under actual compulsion and duress, and in order to immediately proceed with the construction of a certain building upon said premises then in process of construction"; but the court held that a payment, made under such circumstances, was voluntary, and co'ld not be recovered. Here there is no pretense that the plaintiff was stopped from engaging in his chosen occupation. Nor did he pay the money under duress, nor does it appear that he made any protest upon paying it. The case of Custin v. City of Viroqua, 67 Wis. 314, 30 N. W. 515, is especially in point, and collates many authorities upon the subject, and we think the opinion in that case is conclusive against the contention of the respondent. We are therefore of the opinion that the judgment should be reversed, and the complaint dismissed, with costs.

Judgment reversed, and complaint dismissed, with costs. All concur.